Plaintiff appeals from an order of the Circuit Court of Tuscaloosa County granting summary judgment in favor of defendant. We affirm.
On September 8, 1970, defendant entered into a contract for the rental of certain trucks and drivers to be used in connection with a construction project. This contract consisted of a rental agreement and several purchase orders. The rental agreement was signed "Clarence Hunter, T/A Hunter Cricket Farm By Clarence Hunter, Lessor."
During September and October 1970, services were performed under the contract. On October 23, 1970, defendant received a "Notice of Levy" from the Internal Revenue Service notifying defendant that there existed an assessment for unpaid taxes against Clarence H. Hunter, Jr. This document further served notice that the United States asserted a lien on all money then due and owing to Clarence H. Hunter, Jr.
On October 29, 1970, plaintiff and Clarence Hunter appeared at defendant's office and delivered an instrument purporting to assign all of Clarence Hunter's right, title and interest in the contract to plaintiff. This instrument read in part:
 ". . . I, the undersigned Clarence Hunter do hereby sell, assign, set over and transfer unto Anna Hunter all of my right, title and interest in and to that certain contract between the undersigned and The Austin Company . . ."
(Emphasis added.)
On October 30, 1970, defendant cancelled the contract in question and made a new one with plaintiff. The amount due under the contract as of October 29, 1970 was $4,200.00.
On January 21, 1971, an I.R.S. agent appeared at defendant's office. He served a second notice of levy for amounts due to "Clarence H. Hunter, Jr., T/A Hunter's Bait Shop" and a "final demand" for payment of monies owed to "Clarence H. Hunter, Jr., T/A Hunter's Bait Shop." He stated that he would remain in the office until defendant gave him a check for $4,200.00. The final demand and second notice contained excerpts from the Internal Revenue Code pertaining to penalties for failure to surrender property subject to the levy. Defendant gave the agent a check for $4,200.00.
Plaintiff filed suit July 1, 1971 in the Circuit Court of Tuscaloosa County, claiming *Page 205 
the money paid under the levy to have belonged to her. The theory of the suit being that her husband executed the contract as her agent. Defendant petitioned for removal of the case to the United States District Court for the Northern District of Alabama on July 13, 1972. That court, finding that it lacked jurisdiction, remanded the case to Circuit Court on December 12, 1973. On January 24, 1974, defendant moved for summary judgment, attaching affidavits in support of its motion. Plaintiff filed affidavits in opposition to the motion. Both parties briefed the issues for the trial court, which ultimately rendered its order granting summary judgment for defendant on May 14, 1975. This appeal followed.
Appellant in brief urges that summary judgment was improper in this case because there existed a genuine issue of material fact. See Rule 56, ARCP and Langan Construction Co., Inc. v. DauphinIsland Marina, Inc., 294 Ala. 325, 316 So.2d 681. Defendant has extensively briefed the effect of the Internal Revenue Code and cases decided thereunder on the case. Basically it is defendant's position that it was under no duty to determine the validity of a tax levy apparently valid on its face; that it was subject to strict sanctions for non-compliance with the levy and final demand; and that payment to the government was a complete defense to plaintiff's claim, plaintiff's only remedy being a suit for wrongful levy against the United States. Though possessing merit, our opinion will not determine whether plaintiff's only remedy was to attack the levy in U.S. District Court as provided by26 U.S.C. § 7426.
As previously stated, the initial "Notice of Levy" showed a tax assessment against Clarence H. Hunter, Jr. The "final demand" sought monies due "Clarence Hunter; T/A Hunter's Bait Shop." Plaintiff contends that she was the owner of Hunter's Cricket Farm and the trucks used under the contract. She argues that payment to the government to satisfy a tax lien against her husband is not a defense to suit for money defendant actually owed her.
Defendant's affidavits state that its contract was with Clarence Hunter, Jr. Defendant's project accountant swore that he, Hunter, and a man named Free negotiated the contract in September 1970 at defendant's office; that Hunter and Free decided that the contract should be made in the name of "Clarence Hunter, T/A Hunter Cricket Farm;" and that at no time leading up to the contract was there any indication that Clarence Hunter was acting as agent of plaintiff.
Plaintiff's affidavit states that she was the owner of Hunter Cricket Farm. Hunter's affidavit states that he negotiated the contract as agent for plaintiff; that he told defendant's agent this fact; that he had no proprietary interest in Hunter Cricket Farm; and that the term "Clarence Hunter, Jr., T/A Hunter Cricket Farm" merely indicated that he was acting as agent for plaintiff.
Defendant contends that "T/A" as used in the contract stands for "trading as" and shows that as far as defendant knew, Clarence Hunter was Hunter Cricket Farm. Defendant argues that there is no genuine issue of material fact raised by the affidavits because any extrinsic evidence that Hunter negotiated the contract as agent of plaintiff would be inadmissible under the parol evidence rule.
Under 26 U.S.C. § 6331, the Internal Revenue Service is authorized to collect unpaid taxes by levy upon all property and rights to property belonging to the taxpayer. As an aid to the collection process, Congress enacted 26 U.S.C. § 6332 which provides in part:
"§ 6332. Surrender of property subject to levy.
 (a) Requirement. — Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such *Page 206 
part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
. . . . .
"(c) Enforcement of levy. —
 (1) Extent of personal liability. — Any person who fails or refuses to surrender any property or right to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made. . . .
 "(d) Effect of honoring levy. — Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary or his delegate, surrenders such property or rights to property (or discharges such obligation) to the Secretary or his delegate (or who pays a liability under subsection (c)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment. In the case of a levy which is satisfied pursuant to subsection (b), such organization shall also be discharged from any obligation or liability to any beneficiary arising from such surrender or payment.
 "(e) Person defined. — The term "person," as used in subsection (a), includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation."
The result of Section 6332 is to create a statutory attachment and garnishment scheme which takes the place of ordinary garnishment proceedings. The service of such a levy, valid on its face, in effect results in a transfer to the government of the property due taxpayer. United States v. Eiland, 4 Cir.,223 F.2d 118. No provision is made for the debtor (Austin) to contest the validity of the lien or correctness of the assessment. Bolling v.Samples, 117 Ga. App. 38, 159 S.E.2d 727. Indeed, if the debtor defies the lien he is subject to both civil and criminal penalties under § 6332 (c).
The right of a taxpayer to receive payments under a contract is subject to levy under Section 6332. United States v. Barker,309 F. Supp. 1369 (W.D.Va. 1970). The court in Barker entered summary judgment against a debtor who paid the delinquent taxpayer rather than the government.
The contract read that it was between the Austin Company and Clarence Hunter T/A Hunter Cricket Farm. The second notice of levy and the final demand required defendant to turn over all funds due to "Clarence H. Hunter, Jr. T/A Hunter's Bait Shop." It would appear to a person who received such a levy that it was directed to the funds due under the contract in question. Assuming that the levy is valid on its face, payment under the levy would be a defense to this suit under Section 6332.
However, plaintiff contends that the contract was made with Hunter Cricket Farm, a name by which she did business. Her affidavit, and that of Clarence Hunter, support this position and, were they admissible, would create a genuine issue of material fact.
Affidavits in support of a motion for summary judgment may set forth only such facts as would be admissible in evidence. Rule 56 (e) ARCP and comments thereto. Generally, when the parties to a contract reduce their agreement to writing, that writing becomes the sole expositor of the transaction. In the absence of fraud, mistake or ambiguity parol evidence is not admissible to vary the terms of the writing. Collier v. Brown, 285 Ala. 40,228 So.2d 800. No allegation of fraud or mistake has been made. Therefore, unless the contract is *Page 207 
ambiguous, the parol evidence contained in the affidavits of plaintiff and Clarence Hunter would be inadmissible.
The admissibility of parol evidence to show that a party executed a contract as agent for a principal was discussed inRichmond Locomotive Machine Works v. Morange, 119 Ala. 80,24 So. 834. We quote:
 "If an agent, in the execution of a promissory note, disclose his principal, make it appear on the face of the paper that it is the contract of the principal, and sign it as agent, of course the principal is bound, the undertaking being within the agency; and the agent is not. On the other hand, if a principal is not disclosed on the face of the paper, and the party signing describes himself as agent, trustee, or the like, without more, it is the obligation alone of the party whose name is set to the paper, the superadded word or words being mere descriptio personae to be disregarded as surplusage; and evidence cannot be received to show that he was, in fact, the agent or trustee or the like of an undisclosed principal, cestui que trust, or the like, and that the obligation was that of such other person."
 "And again, if the paper discloses the names of two parties, either of whom may be the obligor, and it is doubtful from the whole instrument which of the two is intended to be bound, and the signer describes himself as agent, or as acting in other representative capacity, parol evidence is admissible to show that it is the obligation of the party named in, but not signing, the paper."
We find the instant case falls within the rule, not the exception quoted above. The letters "T/A" have no etiology in the law of contracts or commerce. If accepted, as contended in briefs, to mean "trading as," it carries no implication of agency. As in the use of the term "d/b/a," it merely implies the trade name under which the signatory operates his business. It is descriptio personae to be disregarded as surplusage. Parol evidence may not be received to show that the signer was acting as agent for an undisclosed principal.
The addition of the assignment of the contract executed by Clarence Hunter to plaintiff on October 29 again brings into operation the parol evidence rule. In the assignment, Clarence Hunter, Jr. states that the contract which he signed with the appendage of "T/A Hunter Cricket Farm" was his contract. By affidavit plaintiff attempts to vary the admission of the assignment with parol explanation. Such was not permissible.
The original contract did not contain ambiguity permitting explanation by parol. The additional evidence of the assignment locks plaintiff in to the conclusion that the contract was with Clarence Hunter, Jr., and the benefit derived therefrom was his property and subject to payment by defendant under the levy.
Concluding that the legal evidence contained in the affidavits presented no issue of material fact, the granting of summary judgment was proper. The judgment below is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 208